UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ADAMS,

        Plaintiff,

v.

        Case No. 10-cv-12818
        HON. GEORGE CARAM STEEH

BUREAU OF COLLECTION RECOVERY, LLC,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S APPLICATION IN PART FOR ATTORNEYS' FEES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT [DOC. # 27]

        This action arises out of plaintiff's complaint alleging defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA) and the Michigan Occupational Code, M.C.L. § 339.915 (MOC).  On May 16, 2011, this court granted defendant's motion for summary judgment.  Defendant filed a motion for attorneys' fees and costs on June 13, 2011, pursuant to 15 U.S.C. § 1692k(a)(3).  Defendant alleges plaintiff's actions were brought in bad faith and for the purposes of harassment, and requests $20,714.33 in fees and costs.  Plaintiff argues his claim was not brought in bad faith nor to harass, and that defendant's request is unreasonable.  For the reasons that follow, the court awards defendant a portion of the attorneys' fees requested.

### Background

        On July 16, 2010, defendant removed this lawsuit from state district court where plaintiff originally alleged defendant's violation of FDCPA and MOC.  Defendant filed a motion for summary judgment, and oral argument was heard on March 24, 2011.  On May

16, 2011, this court granted defendant's motion noting plaintiff's lack of evidentiary support for both claims. On June 13, 2011, defendant filed a motion for attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3). Plaintiff answered on July 1, 2011, one day late in violation of Local Rule 54.1.2(b).[1]

Defendant requests an award of $20,714.33 in legal fees, expenses and costs. Defendant retained Jeffrey Smolek, Esq., as local counsel at $165 an hour. Mr. Smolek invoiced legal fees and expenses totaling $3,646.86. The rest of defendant's fees and expenses breaks down as follows: attorney Jeffrey Turner .3 hours at $195 an hour; associate attorney Boyd Gentry 33.8 hours at $175 an hour; associate attorney Melanie Frankel 41.2 hours at $175 an hour; associate attorney John Langenderfer 11.7 hours at $175 an hour; paralegal Katie Widmyer 1.1 hours at $95 an hour; and $1,731.97 in costs and expenses totaling $17,067.47.

## Analysis

A court may award defendant reasonable attorneys' fees and costs under 15 U.S.C. § 1692k(a)(3), "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment . . . ." To prevail, defendant must prove that plaintiff's entire lawsuit, not just a single claim, was brought in bad faith and to harass. Horkey v. J.V.D.B. & Assocs., 333 F.3d 769, 775 (7th Cir. 2003). At the least, "minimally colorable" claims are not considered bad faith or harassing. Guerrero v. RJM Acquisitions, LLC, 499 F.3d 926, 940 (9th Cir. 2007).

---

[1]Even though plaintiff was one day late, defendant was not prejudiced. Therefore the court will not address this issue further.

Defendant's Attorneys are Entitled to Fees and Costs

Defendant's request relies on this court's determination at summary judgment that plaintiff's claims lacked evidentiary support. In Rhinehart v. CBE Group, Inc., 714 F.Supp.2d 1183, 1186 (M.D. Fla. 2010), the court granted fees and held, "[p]laintiff's counsel failed to dismiss *any* of the claims when it became clear during discovery that they had no factual basis whatsoever, forcing Defendant to file a summary judgment motion." Also, the plaintiff in Rhinehart had contradicting testimony in her complaint and depositions. Id. at 1185-86. Failure to dismiss an unmerited claim and contradicting testimony led the Rhinehart court to conclude that the claim was brought in bad faith and warranted attorneys' fees.

Defendant points to this court's holding that plaintiff lacked evidentiary support and had contradicting testimony in order to establish plaintiff's bad faith. At summary judgment, this court noted plaintiff had no record of phone calls nor any colorable claims stemming from his conversations with defendant. Plaintiff also relied merely on the allegations in his own pleadings, which is insufficient to survive summary judgment. Saltzman v. I.C. Systems, Inc., 2009 WL 3190359, at *7 (E.D. Mich. 2009) (defendant granted summary judgment on plaintiff's FDCPA claims because plaintiff relied on mere allegations in her complaint without providing any evidence that defendant placed calls with the intent to annoy, harass, or abuse.). Moreover, plaintiff's allegations that defendant called him at work conflicted with his affidavit stating that he was self-employed and did not have a business phone.

Plaintiff argues his claims were not brought in bad faith nor to harass because they were at least minimally colorable. Plaintiff relies on a district court ruling stating, "the

3

standard for bad faith is higher than the standard for mere frivolousness." Sanchez v. United Collection Bureau, Inc., 649 F.Supp.2d 1374, 1382 (N.D. Ga. 2009). Also, plaintiff notes that even if the claim lacked merit, defendant failed to define bad faith and failed to show plaintiff's motive for harassment. Campbell v. Credit Bureau Systems, Inc., 655 F.Supp.2d 732, 743 (E.D. Ky. 2009). Before summary judgment, plaintiff believed his claim was colorable for three reasons. First, defendant placed numerous calls to him alleging he owed a debt that he in fact did not owe. Second, the calls were abusive because defendant yelled at him. Third, defendant continued to call after plaintiff showed documentation that he did not owe the alleged debt. Therefore, plaintiff argues his claims were not brought in bad faith because he had reason to believe he would prevail. In addition, plaintiff cites Wilson v. Merchs. & Med. Credit Corp., 2010 U.S. Dist. LEXIS 91237, at *21-22 (E.D. Mich. Sept. 2, 2010), which held that unsupported claims that may unreasonably multiply proceedings are not per se bad faith to warrant sanctions under § 1692k(a)(3).

The issue is whether defendant has established enough to show plaintiff's complaint was brought in bad faith and with intent to harass. Defendant contends that after discovery plaintiff should have known his claims lacked evidentiary and legal support. At summary judgment, this court addressed defendant's calls to plaintiff and readily dismissed them. Specifically: plaintiff was not harassed at work and had contradicting testimony on this issue, defendant's yelling at plaintiff over the phone does not support his claim,[2] and the debt collector is entitled to rely on a creditor's representations and is not required to

---

[2] Majeski v. I.C. System, Inc., 201 WL 145861, at *4 (N.D. Ill. Jan. 8, 2010) ("Yelling and rude language, while disrespectful, does not by itself violate 1692d.").

4

conduct an independent investigation to determine if plaintiff was truly indebted.[3] Furthermore, as the Saltzman court held, plaintiff should have known he could not merely rely on the allegations in his complaint to survive summary judgment. Therefore, simple legal research should have warned plaintiff of his non-viable claims, and that continuing to bring these claims would cause needless expenditures for defendant. Thus, this court accepts defendant's argument that plaintiff's failure to dismiss untenable claims establishes plaintiff's bad faith and intent to harass.

Defendant's Requested Attorneys' Fees are Unreasonable

Determining a reasonable fee begins with calculating the product of a "reasonable hourly rate" and the "number of hours reasonably expended on the litigation." Kuhne v. Law Offices of Timothy E. Baxter an Associates, P.C., 2009 WL 1798926, at *1 (E.D. Mich. 2009), quoting Hensley v. Eckerhart, 461 US. 424, 433 (1983). "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." Id., quoting Wayne v. Village of Sebring, 36 F.3d 517, 533 (6th Cir. 1994). A useful guideline in determining a reasonable hourly rate is the "prevailing market rate . . . in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). The prevailing market rate is defined as, "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000). However, "[h]ours attributable to excessive, redundant or otherwise unnecessary work must be excluded." Hensley, 461 U.S. at 434. "Thus, courts have reduced fee awards where the requested fee reflected duplication of

---

[3] Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1031-32 (6th 1992)(FDCPA does not require independent investigation of debts referred for collection).

services, excessive time for simple or routine tasks, [and] the use of too many attorneys . . . ." Jackson v. Butler, 2009 WL 5217675, at *6 (E.D. Mich. Dec. 29, 2009), citing Hirsch and Sheehey, Awarding Attorneys Fees and Managing Fee Litigation (2nd ed. 2005).

Defendant urges the court to award attorneys' fees and costs of $20,714.33. Their argument relies on cases like Jackson, which held hourly rates between $200 and $250 for attorneys with 20 to 29 years of experience are reasonable. Id. (According to the 2007 Economics of Law Practice Summary Report by the State Bar of Michigan), see also O'Connor v. Trans Union, LLC, 2008 WL 4910670, at *6 (E.D. Mich. Nov. 13, 2008) ("District courts have relied on the State Bar of Michigan Economics of Law Practice Survey to determine average billing rates in Michigan, and the Sixth Circuit has approved this practice."). The court accepts defendant's requested rates of $195, $165 and $175 an hour as reasonable.

Plaintiff contends that the hours billed by defendant's attorneys were unreasonable. First, plaintiff points out defendant's argument for bad faith depends on plaintiff's failure to dismiss a non-viable claim. Subsequently, defendant had four attorneys working on this case even though they argue it lacked merit. Plaintiff further argues that defendant's refusal to file a motion to dismiss the frivolous claims unreasonably extended unwarranted attorney hours. Additionally, Mr. Smolek was acquired as local counsel, but defendant continued sending attorneys from Ohio. For example, Mr. Smolek conducted depositions and Mr. Gentry drove from Ohio to also conduct depositions. Defendant could have simply allowed Mr. Smolek to conduct all depositions in order to save substantial expense. Finally, plaintiff had reason to believe his claim was at least minimally colorable before discovery

was finalized. It was after discovery was complete and defendant's motion for summary judgment was fully briefed that plaintiff could review all of the information about the case and decide whether or not to continue to bring his claim. Therefore, the court concludes that plaintiff's failure to dismiss his claims only warrants fees that defendant incurred in participating in the hearing on its motion for summary judgment before the court on March 24, 2011. Attorney Gentry expended 8.5 hours in travel time and appearing before this court, for a fee of $1,487.50 (Ex. 2, Defendant's motion for attorneys' fees).[4]

## Conclusion

For the reasons stated above, defendant's request for attorneys' fees and costs is GRANTED in part. Plaintiff shall pay $1,487.50 in fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) of the Fair Debt Collection Practices Act.

SO ORDERED.

Dated: July 28, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on July 28, 2011, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---

[4] The plaintiff and not plaintiff's attorney is required to pay defendant's attorneys' fees. This is because the statute does not specify that plaintiff's attorney must pay fees and defendant did not bring request for sanctions under Federal Rule of Civil Procedure 11.